BENJ. F. RUGG v. A. O. BRAINERD AND OTHERS.

[In Chancery.]

*Mortgage. Apportionment. Marshaling Securities. Subrogation. Payment of Note.*

1. When one purchases a part of a farm with a mortgage on the whole farm, and assumes the entire mortgage by being secured to pay the excess above the consideration paid for his parcel, and he pays such excess, the notes so paid are extinguished; and on a foreclosure of the mortgage he cannot share in the security afforded by it.
2. And in such a case, the mortgagee is not affected by any equities arising between the separate owners, whereby such excess could be apportioned.

PETITION to foreclose a mortgage. Heard on petition, several answer and cross-bill of A. O. Brainerd, the report of a special master and exceptions thereto, April Term, 1884, ROYCE, Chancellor. The petition was taken as confessed against all the defendants except the said A. O. Brainerd; and as to him, the chancellor decreed a foreclosure of the mortgage, and dismissed the cross-bill. It appeared from the report, "that said farm by the conveyance of part thereof by said Clarks on said November 6, 1873, and by subsequent conveyances of other parts, became parcelled into three parts,—one of seventy-five acres, one of sixty-three acres, and one of twenty-five acres." The cross-bill alleged that the parcel of seventy-five acres "is primarily liable for the payment of said mortgage notes in said original bill set forth; and that said twenty-five acres now owned by said Rugg mentioned in said answer is secondarily liable for said notes; and that the residue of said premises in said bill mentioned, and conveyed by your petitioner to said Brown, ought not to be applied to the payment of said notes until said seventy-five acres and twenty-five acres are

applied upon said notes; and that your petitioner is entitled to a decree" to that effect, &c. The other facts are sufficiently stated in the opinion.

*Cross & Start*, for A. O. Brainerd.

On November 6, 1873, the original mortgagors made provision for the payment of the whole mortgage debt, $9,375, by the sale of the seventy-five acres, and of the balance by mortgaging the sixty-three acres. Inasmuch as this defendant paid this balance on the security of the sixty-three acres and ultimately took the security in satisfaction of the payment, the case stands the same as if on November 6, 1873, Stranahan and party had bought the seventy-five acres, agreeing to pay the $9,375, and this defendant had bought the sixty-three acres, agreeing to pay the balance; and either party would be entitled to hold the original mortgage notes taken up for the protection of the title of the parcel acquired by him. The payment of the balance of the debt by this defendant was not an extinguishment of the debt unless the title to the sixty-three acres, which was the consideration for the payment, was assured to him; and these notes in the hands of the defendant paid as they were, were a part of the mortgage debt outstanding to be enforced against the whole property. If defendant had not paid this balance the petitioner's debt would have been so much larger. By paying it under this arrangement upon the security of the sixty-three acres, he became subrogated in equity to the rights of the petitioner, so far as to protect the title of the sixty-three acres against the original mortgage.

*George T. Mooney* and *Wilson & Hall*, for the orator.

The Brainerds and Stranahan having obligated themselves, in the deed from the Clarks of the seventy-five acre parcel, to pay the entire mortgage debt in the mortgage sought to be foreclosed, have assumed the position of the

Clarks and made themselves liable for its payment to the orator. Therefore, they are estopped from claiming any interest in the mortgaged premises, as against the orator, until they have paid all the mortgage notes. The defendant, A. O. Brainerd, cannot keep said notes on foot as unpaid, and claim the right to participate in the security of said mortgage. Jones Mort. ss. 740, 743, 755, 865; *Wilson* v. *Burton*, 52 Vt. 394; Pom. Eq. Juris. ss. 797, 1206; *Welch* v. *Beers*, 8 Allen, 151; *Gates* v. *Adams*, 24 Vt. 70; *Lyman* v. *Lyman*, 32 Vt. 79.

The opinion of the court was delivered by

TAFT, J.   On the 6th day of November, 1873, the Clarks owned the Holyoke farm consisting of one hundred and sixty-three acres, subject to a mortgage in favor of the petitioner of ten thousand five hundred and seventy dollars. The Clarks on that day conveyed seventy-five acres to A. O. Brainerd, Herbert Brainerd, and Stranahan, the grantees agreeing to pay the Rugg mortgage. The consideration of the purchase was nine thousand three hundred and seventy-five dollars. On the same day the Clarks mortgaged the remaining eighty-eight acres with other lands to Aldis O. Brainerd to secure him among other things in paying the excess of the mortgage over the purchase price of the seventy-five acre lot, viz.: 1,382 50-100 dollars, and for the payment of all other sums that the Clarks might thereafter owe the said Brainerd. It was understood at the same time that A. O. Brainerd should pay the said sum of 1,382 50-100 dollars, and an unsecured debt due from the Clarks to the petitioner. Aldis O. released his mortgage on twenty-five acres of the land so mortgaged to him, and the Clarks then mortgaged the same to the petitioner to secure such unsecured debt; and the twenty-five acres passed to the petitioner by foreclosure of his mortgage, Aldis O. being a party defendant. The petitioner subsequently sold the twenty-five acre lot. Said Aldis O. in pursuance of the

Rugg *v.* Brainerd.

agreement between him and said Clarks paid the said sum of 1,382 50-100 dollars, and the Clarks conveyed to him the residue of said farm. Said Aldis O. gave them a receipt for the deed in full of the notes he held against them, being those upon which he had paid the said sum of 1,382 50-100 dollars, and agreed to give them up provided there had been no liens of a recent date placed on said property. Aldis O. insists that having paid these notes he should share with the petitioner in the security afforded by the original mortgage. Upon the facts reported by the master, it is very clear that the payment of the 1,382 50-100 dollars was a payment made by the Clarks themselves. It is true Aldis O. paid the petitioner the money, but he had agreed with the Clarks that he would pay it; they had secured him for so doing, and after he had paid it they conveyed to him the remaining portion of the farm, which he received in full of said notes, upon which he had paid the 1,382 50-100 dollars. The notes, having been paid for the Clarks, were thereby extinguished. Aldis O. may have the right to insist that the purchase price of the seventy-five acres, the Fair ·Ground lot, as between him and the owners of the lot, shall be charged upon such lot; but the petitioner is not affected by any equities arising between the separate owners of the different portions into which the premises have been divided.

It is unnecessary to say anything upon the questions of evidence presented by the report; for treating the facts found from it as properly in the case, the petitioner is entitled to the relief sought notwithstanding such facts.

Decree affirmed and cause remanded.